MAX N. TOBIAS, JR., Judge.
hThe plaintiffs/appellants appeal the denial of class certification with regard to the City of New Orleans’ Automated Traffic Enforcement System (“the ATES Ordinance”), City Ordinance §§ 154-1701 et seq. The plaintiffs seek to have a class certified based on the “possible jail time” language contained in the “Delinquent Notice” for violation of speeding or red light violations caught on camera, which language was included on the back of certain delinquent notices for a period of time sent to those who failed to pay their fines for *215 speeding and red light violations. The City of New Orleans maintains that the “possible jail time” language was present through pure inadvertence and that no one was ever arrested based on failure to pay. Having reviewed the record and applicable law, we find no error on the part of the trial court and affirm the judgment denying class certification.
Facts and Procedural History[1]
The ATES ordinance was enacted in 2007. It clearly states that it is imposing a civil penalty for traffic violations that are recorded by the automated |2system. The original plaintiff, Michelle Albe, was issued a citation for speeding on 12 October 2008. She sought review of the citation and contended that the evidence was inconclusive to establish a violation as alleged by the city. The hearing officer ruled against her.
In December 2008, Ms. Albe sought judicial review in Civil District Court for the Parish of Orleans. In February 2009, a supplemental and amending petition was filed in which she also challenged the overall validity of the ATES ordinance and sought to have it declared unconstitutional on its face and as applied. She also asserted claims based on the Fair Debt Collections Practices Act (“FDCPA”), 15 U.S.C. § 1692 et seq., and Louisiana tort claims of malicious prosecution and fraud. Although Ms. Albe timely appealed the decision of the hearing officer, she received a delinquency notice that threatened “possible jail time” despite the fact that the fines were civil in nature.
In April 2009, Ms. Albe filed a second supplemental and amending petition that added American Traffic Solutions (“ATS”), the company administering the automated system, as a defendant. In July 2009, Ms. Albe filed a third supplemental and amending petition seeking class certification. She sought to have the class defined as:
[registered owners of automobiles [who] each received a Notice of Violation, directly or indirectly, by mail from the defendants for speeding or violating a red light, in alleged violation of the ATES ordinance. According to each Violation, these alleged traffic violations took place within the City of New Orleans and, hence, provided for the “civil” liability assessed against the Putative Class Plaintiffs as registered owners of the vehicle in question. At the time of this filing, Putative Class Plaintiff IsMichelle Albe is still contending the unconstitutionality of her ticket through this appeal.
The Putative Class Plaintiff intends to represent the class of all automobile owners ticketed by the defendants for violating the ATES ordinance since its inception who have either 1] paid the fines directly, 2] contested the fines, lost and paid, or 3] not yet paid or contested the fines, and have received the DELINQUENT NOTICE from the defendants which threatened them with “possible jail time” by the defendants for their failure to comply with the ATES ordinance. [Emphasis in original.]
In December 2009, ATS filed a motion for partial summary judgment regarding the constitutional challenges to the ordinance. In March 2010, Ms. Álbe filed her own motion for partial summary judgment regarding her FDCPA, malicious prosecution, and fraud claims. The following month, the trial court granted the defendants’ motion, dismissing all constitutional challenges to the ordinance and overall validity of the ATES ordinance, with exception of the claim that the ordinance is *216 preempted by the Louisiana Highway Regulatory Act, La. R.S. 82:1 et seq. The court also denied the motion filed by Ms. Albe.
In October 2010, Ms. Albe filed a fourth supplemental and amending petition and class action suit for damages and declaratory relief. In December, Ms. Albe requested leave to file a “modified” fourth supplemental and amending petition and class action suit for damages and declaratory relief. At that time, eight additional plaintiffs and putative class representatives were added. However, it was later discovered that the newly-named plaintiffs had not received av delinquent notice with the “possible jail time” language; the trial court dismissed the tort claims of those plaintiffs with prejudice.
In response to the modified fourth petition, ATS filed peremptory exceptions of prescription, res judicata, no- cause of action, and no right of action. At the 1 14July 2011 hearing on ATS’s peremptory exceptions, the court found that the plaintiffs were not third party beneficiaries pursuant to the contract between ATS and the City; dismissed all of the plaintiffs’ claims against ATS challenging the constitutionality and overall validity of the original ATES ordinance; and dismissed the plaintiffs’ breach of contract and civil extortion claims, finding that Louisiana does not recognize an action for civil extortion. Plaintiffs appealed the dismissal of their breach of contract claim. This court affirmed. See Albe v. City of New Orleans, 12-0073 (La.App. 4 Cir. 7/5/12), 97 So.3d 583, writ denied, 12-1813 (La.11/2/12), 99 So.3d 678.
On 17 July 2012, ATS filed a motion for summary judgment seeking dismissal of the plaintiffs’ remaining tort claims of fraud, -malicious prosecution, intentional infliction of emotional distress (“IIED”) and negligent infliction of emotional distress (“NIED”), or, in the alternative, dismissal of any class allegations with regard to such claims. At the 12 October 2012 hearing on the motion, the court dismissed the malicious prosecution claim with prejudice, but declined to dismiss the remaining claims for fraud, IIED, and NIED. ATS sought supervisory review from this court, which was denied. See Albe v. City of New Orleans, Photo Safety Program, 12-1636, unpub. (La.App. 4 Cir. 1/4/12). In his concurrence, Judge Tobias noted “that the language concerning jail time was left in the notice despite numerous corrections thereto, despite the fact that both the city of New Orleans and the Traffic Enforcement Systems (‘ATES’) knew that the ordinance was civil in nature and did not include any language about jail time.” He also.noted that the “language- suggesting the potential for jail time, when jail time could not be imposed, may be sufficient to constitute extreme and outrageous behavior _” Id., Tobias, J., concurring.
|fiOn 13 May 2013, the plaintiffs filed a fifth supplemental and amending petition, adding three new plaintiffs as proposed class representatives, Vernetta Ballard, Jennifer Jenkins, and Nicole Braud. The fifth petition also stated that Oliver Green and Mrs. Albe were withdrawing their request to serve as class representatives. Ms. Braud was likewise withdrawn. On 4 October 2013, the trial court dismissed all claims by Ms. Ballard with prejudice, finding her claims were prescribed.
On October 15, 2013, a hearing on certification of the class was held. Specifically, the plaintiffs sought class certification regarding the remaining tort claims of fraud, IIED and NIED. The fifth petition requested the court to certify the class as those “[pjersons who received a Delinquency Notice from the City of New Orleans, Photo Safety Program (“PSP”), and which Delinquency Notice contained the *217 statement that “possible jail time may be assessed against you.”

Discussion and Analysis

Before discussing the trial court’s judgment and reasons thereto, it is necessary to review La. C.C.P. art. 591, which states in pertinent part:
A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
(1) The class is so numerous that joinder of all members is impracticable.
(2) There are questions of law or fact common to the class.
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
(4) The representative parties will fairly and adequately protect the interests of the class.
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be | (¡rendered in the case. This prerequisite shall not be satisfied if it is necessary for the court to inquire into the merits of each potential class member’s cause of action to determine whether an individual falls within the defined class.
B. An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:
(1)The prosecution of separate actions by or against individual members of the class would create a risk of:
(a)Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(b)Adjudications with respect to individual members of the class which would as a practical matter be disposi-tive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final in-junctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include;
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
(b)The extent and nature of any litigation concerning the ^controversy already commenced by or against members of the class;
(c) The desirability or undesirability of concentrating the litigation in the particular forum;
(d) The difficulties likely to be encountered in the management of a class action;
(e) The practical ability of individual class members to pursue their claims without class certification;
*218 (I) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation; or
(4) The parties to a settlement request certification under Subpara-graph B(3) for purposes of settlement, even though the requirements of Sub-paragraph B(3) might not otherwise be met.
C. Certification shall not be for the purpose of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class. However, following certification, the court shall retain jurisdiction over claims or defenses dependent for their resolution on proof individual to a member of the class.
The trial court, inter alia, denied class certification, holding that the plaintiffs failed to prove the requirements of numer-osity and commonality. However, it did find that the requirements of typicality and fair and adequate representative of the putative class were met. Finally, the court held that the requirement of an objectively definable class was not proven because the proposed class definition was imprecise and overbroad, thereby containing members who could not possibly have any cause of action.
| Jn Doe v. Southern Gyms, L.L.C., 12-1556 (La.3/19/13), 112 So.3d 822, the Court stated:
A rigorous analysis must be used to determine whether a class action meets the requirements imposed by law, since this procedural device is an exception to the rule that litigation be conducted by and on behalf of the individually named parties only. Brooks v. Union Pacific R. Co., 2008-2035, p. 10 (La.5/22/09); 13 So.3d 546, 554; see Wal-Mart Stores, Inc. v. Dukes, — U.S. -, 131 S.Ct. 2541, 2550, 180 L.Ed.2d 374 (2011); Price, 11-0853, p. 6; 79 So.3d at 966.[2] Such an analysis requires the district court to:
evaluate, quantify and weigh [the relevant factors] to determine to what extent the class action would in each instance promote or detract from the goals of effectuating substantive law, judicial efficiency, and individual fairness. Upon arriving at an estimate of the class action’s overall effectiveness in furthering the intertwined goals, the court must compare this with its assessment of the effectiveness of other adjudicatory methods and decide whether the class action is the superi- or procedural device.
McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d 612, 618 (La.1984). In doing so, “the trial court must actively inquire into every aspect of the case and should not hesitate to require showings beyond the pleadings.” Id.
“Class action rules do not set forth a mere pleading standard; rather, a party seeking class certification must affirmatively demonstrate his compliance with the [class action requirements] — that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.” Price, 2011-0853, p. 7; 79 So.3d at 967, citing Wal-Mart Stores, Inc., 131 S.Ct. at 2551 (emphasis in original, internal quotations omitted). Frequently, the “rigorous analysis” required to make the class certification determination “will entail some overlap with the merits of the *219 plaintiffs underlying claim.” Wal-Mart Stores, Inc., 131 S.Ct. at 2551; see Price, 2011-0853, p. 6; 79 So.3d at 967.[3] This overlap into the merits is not unusual or unexpected. “Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.” Dupree, 2009-2602, p. 7; 51 So.3d at 680, citing Castano v. American Tobacco Co., 84 F.3d 734, 744 (5th Cir.1996).
In reviewing a class certification, the trial court’s factual findings are subject to the manifest error standard; however, the ultimate decision of whether or not to certify the class is reviewed under an abuse of discretion standard. Price, 2011-0853, p. 7-8; 79 So.3d at 967; Dupree, 2009-2602, p. 7; 51 So.3d at 680; Brooks, 2008-2035, p. 10; 13 So.3d at 554. “Implicit in this deferential standard is recognition of the essentially factual basis of the certification inquiry and of the district court’s inherent power to manage and control pending litigation.” Dupree, 2009-2602, p. 7; 51 So.3d at 681; Brooks, 2008-2035, p. 11; 13 So.3d at 554 (internal citations omitted).[4] Whether the district court applied the correct legal standard in determining whether to certify the class is reviewed de novo. Price, 2011-0853, p. 8; 79 So.3d at 967; Brooks, 2008-2035, p. 11; 13 So.3d at 554.
The party seeking to maintain the class action has the burden of proving that all of the statutory class certification criteria have been satisfied. [Footnotes supplied.]
Doe, 12-1556 at pp. 8-10, 112 So.3d at 829-30.

Numerosity

The trial court found that the plaintiffs failed to prove that a definable class of aggrieved persons exists whereby join-der would be impracticable. While the plaintiffs maintain that there are over 40,-000 putative class members, ie., 40,000 persons who were sent notices with the “possible jail time” language, the spreadsheet produced by the defendants during discovery did not support this claim. The defendants rely on the spreadsheet that showed that a significant number of businesses were also sent the delinquent notice. In addition, other | ^individuals and businesses received delinquent notices on multiple occasions. Thus, the actual number of vehicle owners was far less than the approximate 40,000 number relied upon by the plaintiffs.
The trial court stated that to be “aggrieved” in this case, a vehicle owner must not only have received a delinquent notice with the “possible jail time” language, but must also have read the language on the back of the notice. The plaintiffs’ own expert, Charles Figley, Ph.D., testified at the certification hearing that a difference exists between mere receipt of a notice and the actual reading of the notice.[5] The trial court found that the plaintiffs had failed to produce sufficient evidence that a substantial number of persons suffered damages or injuries as a result of the receipt of the “possible jail time” language.
The plaintiffs argue that the evidence introduced at the hearing demonstrated that approximately 42,000 letters contain *220 ing the offending language were mailed. Of those, about 5,600 were returned as undeliverable. We agree with plaintiffs that Louisiana courts have certified classes of just over 100 members. We, however, find that this matter concerns more than a tally of how many individuals received a notice with the “possible jail time” language. We agree with the trial court that plaintiffs needed to show that more than one or two people were aggrieved by that language and suffered damages.
In Chiarella v. Sprint Spectrum, LP, 04-1433, pp. 18-19 (La.App. 4 Cir. 11/7/05), 921 So.2d 106, 119, quoting Cooper v. City of New Orleans, 01-0115, p. 4 (La.App. 4 Cir. 2/14/01), 780 So.2d 1158, 1160, unit denied, 01-0720 (La.5/11/01), 792 So.2d 734, we stated:
11t Concerning numerosity, no set number has been established that automatically makes joinder impracticable; rather the determination is based on the facts and circumstances of each case. Dumas v. Angus Chemical Co., 25,632 (La.App. 2 Cir. 3/30/94), 635 So.2d 446, 450. Although identification of all potential class members is not necessary, the party seeking certification should establish a definable group of aggrieved claimants. Farlough v. Smallwood, 524 So.2d 201, 203 (La.App. 4th Cir.), writ denied, 526 So.2d 810 (La.1988). Con-clusory allegations do not carry the plaintiffs burden to establish numerosity. Lewis v. Roemer, 94-0317 (La.App. 4 Cir. 9/29/94), 643 So.2d 819, 822. [Emphasis added.]
[[Image here]]
The parties agreed that there were approximately 60,000 Sprint PCS wireless subscribers during the class period. Mr. Tolsdorf testified that, based on the Sprint Defendants’ answers to discovery propounded by the plaintiffs, there were 14,000 subscribers at the end of 1997; 37,700 at the end of 1998; and 61,000 at the end of 1999. He stated that all the subscribers would be equally affected by blocked calls in the system and would have experienced excessive dropped calls.
Based on the evidence in the record, however, a court cannot assume that all of the Sprint PCS wireless subscribers were unhappy with their service. Frederick Fortuna, Director of Core Engineering for Sprint Communications Service, testified that because wireless communications involve sending signals through the atmosphere using radio waves, wireless users can experience blocked or dropped calls. [Emphasis supplied.]
Id. at p. 19, 921 So.2d at 120.
We find Chiarella to be on point. The plaintiffs must produce evidence to demonstrate a definable group of aggrieved claimants, which they did not do at the certification hearing. Thus, we find that the trial court correctly held that the class did not meet the numerosity requirement for class certification.

11⅞Commonality

The plaintiffs next argue that the trial court erred by finding a lack' of commonality when denying the class certification.
As the Court stated in Price v. Martin, 11-853, p. 10 (La.12/6/11), 79 So.3d 960, 969:
The commonality prerequisite requires a party seeking class certification to show that “[t]here are questions of law or fact common to the class.” La. C.C.P. art. 591(A)(2). This language is “easy to misread, since ‘[a]ny competently crafted class complaint literally raises common “questions.’ ” ” Wal-Mart Stores, Inc., 131 S.Ct. at 2551, quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L.Rev. 97, 131-32 (2009). The *221 mere existence of common questions, however, will not satisfy the commonality requirement. Commonality requires a party seeking certification to demonstrate the class members’ claims depend on a common contention, and that common contention must be one capable of class-wide resolution — one where the “determination of its truth or falsity will resolve an issue that is' central to the validity of each one of the claims in one stroke.” Wal-Mart Stores, Inc., 131 S.Ct. at 2551. As this court has succinctly explained:
To satisfy the commonality requirement, there must exist “as to the totality of the issues a common nucleus of operative facts. .\ . ” A common question is one that, when answered as to one class member, is answered as to all of them. [Citations omitted.] Dupree, 09-2602 at 11, 51 So.3d at 682-83.
With these principles in mind, we turn to the present case. The trial court stated that:
■ There are a multitude of individualized inquiries and proof that-make up the damages and liability issues essential to Plaintiffs’ tort claims of fraud, IIED and NIED, including but not limited to, whether the vehicle owner read the “possible jail time” language on the back of the Delinquent Notice, whether the vehicle owner relied upon such language, whether any reliance was | ^justifiable or excusable, whether the inadvertent language caused the vehicle owner specific damages, whether the vehicle owner saw -a doctor concerning such alleged damages, and whether a doctor causally related the Delinquent Notice to any alleged mental anguish or other damages.
The court also noted that the plaintiffs had attempted to name a number of class representatives over the years. However, at the certification hearing, only one remained and testified, Jennifer Jenkins. In addition, that testimony failed to establish a “predominance of common character and the superiority of the class action procedure.” Banks v. New York Life Ins. Co., 98-0551, p. 9 (La.7/2/99), 737 So.2d 1275, 1281.
We agree that the inability to secure but one class representative out of the thousands of individuals who received the delinquency notices with the “possible jail time” language militates against the commonality requirement. Such seems to suggest that either recipients of the notice did not read the back of it that contained the “possible jail time” language, or if they did, the “possible jail time” language did not disturb them. Further, we note that the “possible jail time” language was listed with other penalties that might occur or apply should the fine not be paid. If recipients paid the amount listed as past due in the delinquency notice, no further penalties could be levied by the City.
We find that the trial court did not abuse its discretion when it concluded that the plaintiffs failed to satisfy the commonality requirement.

Typicality and Fair and Adequate Representation of the Putative Class ■

The trial court found that the plaintiffs satisfied the element of typicality and adequacy of representation. Appellate review of that issue was not sought by the parties; thus, it is not before us.

_J¿¿Objectively Definable Class

The trial court found the class definition in the fifth supplemental and amending petition to be overly broad. The fifth petition requested the court to certify the class as those “[p]ersons who received a Delinquency Notice from the City of New Orleans, Photo Safety Program (“PSP”), and which Delinquency Notice contained the statement that possible jail *222 time may be assessed against you.” We agree with the trial court.
La. C.C.P. art. 591 A(5) requires, “The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.” The parties seeking certification must be able to establish a definable group of aggrieved persons based on objective criteria derived from the operative facts of the case. Smith v. City of New Orleans, 13-0802, p. 8 (La.App. 4 Cir. 12/23/13), 131 So.3d 511, 517-518, quoting Chalona v. Louisiana Citizens Prop. Ins. Corp., 08-0257, p. 9 (La.App. 4 Cir. 6/11/08), 3 So.3d 494, 502 [citation omitted].
The purpose of the class definition requirement is to ensure that the class is not amorphous, indeterminate, or vague, so that any potential class members can readily determine if he/she is a member of the class. Clement v. Occidental Chemical Corp., 97-246, p. 9 (La.App. 5 Cir. 9/17/97), 699 So.2d 1110, 1114.
The final class definition set forth in the fifth petition does not limit itself to only those harmed or aggrieved by a delinquency notice with the “possible jail time” language. In other words, the class definition includes thousands of individuals who would not have a cause of action. Thus, we find that the trial 11f;court did not abuse its discretion when it found that the plaintiffs did not satisfy this requirement.

Conclusion

Based on the foregoing, we affirm the judgment of the trial court that denied class certification.

AFFIRMED.

. The procedural history is taken extensively from the trial court's reasons for judgment.

. Price v. Martin, 11-0853 (La.12/6/11), 79 So.3d 960.

. Dupree v. Lafayette Ins. Co., 09-2602 (La. 11/30/10), 51 So.3d 673.

. Brooks v. Union Pacific R. Co., 08-2035 (La.5/22/09), 13 So.3d 546.

.Of course, such a statement is obviously accurate.