PAULETTE STOKE, RICQUEL HALE, RODNEY THOMAS, JOINELL STOKES, ANGELLICA BOZANT, ALVIN JONES AND CAROL JONES

VERSUS

THE CITY OF NEW ORLEANS, THE HONORABLE MITCH LANDRIEU, THE HONORABLE STACY HEAD, THE HONORABLE JASON ROGERS WILLIAMS, THE HONORABLE SUSAN G. GUIDRY, THE HONORABLE LATOYA CANTRELL, THE HONORABLE NADINE M. RAMSEY, THE HONORABLE JARED C. BROSSETT, ET AL.

\*     NO. 2025-CA-0258

\*     COURT OF APPEAL

\*     FOURTH CIRCUIT

\*     STATE OF LOUISIANA

\*

\*

\* \* \* \* \* \* \*

*JCL*     **LOBRANO, J., DISSENTS WITH REASONS**

I respectfully dissent from the decision to affirm the denial of class certification.

In my view, the district court misapplied the governing class action principles by conflating the numerosity inquiry into the merits of the plaintiffs' fraud theories, and by demanding individualized proof of reliance and damages as a prerequisite to certification. The undisputed evidence of a standardized municipal revenue program that generated more than 800,000 citations and over $88 million in payments under a single, uniform scheme is more than sufficient to establish a definable group of aggrieved persons for purposes of numerosity and to warrant consideration of the remaining Article 591(A) and (B) requirements.

The standard of review is well settled. We review the ultimate decision to certify or deny certification for abuse of discretion. We review factual findings for manifest error and questions of law *de novo*. *Doe v. S. Gyms, LLC*, 12-1566, 12-1572, 12-1580, p. 9 (La. 3/19/13), 112 So.3d 822, 830. A district court abuses its

1

discretion when it applies an incorrect legal standard or misapprehends the legal significance of the facts before it.

Class certification is a procedural determination. It does not decide "whether the plaintiffs may prevail on the merits." *Price v. Martin*, 11-0853, p. 15 (La. 12/6/11), 79 So.3d 960, 972. At the same time, *Price* and *Doe* require a "rigorous analysis" and a "close look" at the record to determine whether the Article 591 prerequisites are satisfied. *Price*, 11-0853, p. 7, 79 So.3d at 967; *Doe*, 12-1566, 12-1572, 12-1580, p. 14, 112 So.3d at 833. That rigorous analysis must question whether the statutory prerequisites are met but must not question whether the plaintiffs have proven fraud, reliance, or causation on a class-wide basis at the certification stage. In my view, the district court and the majority conflated these inquiries.

Article 591(A)(1) requires that "[t]he class is so numerous that joinder of all members is impracticable." As *Doe* underscores, "there is no strict numerosity threshold," and numerosity is "not based on the number of class members alone." 12-1566, 12-1572, 12-1580, pp. 10-11, 112 So.3d at 830-31. The plaintiff must show both that joinder is impracticable and that there exists a definable group of aggrieved persons. *Id.* at p. 12, 112 So.3d at 831.

In the case *sub judice*, the record reflects that, since 2007, the ATES Program has produced more than 800,000 citations and over $88 million in collected fines, fees, and civil penalties. The proposed class is limited to persons and entities who both (1) received a Notice of Violation pursuant to the ATES Ordinance and (2) "subsequently paid any fine, fee, civil penalty, costs or other payment in full or in partial satisfaction of the Notice of Violation, and/or any costs associated with appealing the Notice of Violation."

That is an objectively defined group. It is also, by any reasonable measure, a group so large that joinder is impracticable. The majority does not seriously

2

dispute that point. Instead, the majority demands evidence of a "definable group of aggrieved persons" and then defines "aggrieved" to mean those who can already prove individualized reliance on specific misrepresentations in the Notice of Violation or on the content of the Affidavit of Non-Liability. I disagree with the majority's application and reasoning.

In a case challenging a standardized municipal enforcement and collection program, the economic injury that defines "aggrieved" status is the compelled payment of civil penalties pursuant to an allegedly unlawful and fraudulent scheme. Whether each recipient read every word of the Notice or the Affidavit of Non-Liability, or whether each can presently prove reliance to a trial court's satisfaction, is not the test for numerosity. Those questions go to the merits of fraud and causation and, if necessary, to the management of damages and defenses in later phases of a certified action.

By insisting that plaintiffs, at the certification stage, prove "the number of persons" who actually read the alleged misstatements and relied on them in paying their fines, the district court and now the majority convert Article 591(A)(1)'s numerosity requirement into a trial on the merits on reliance. That approach cannot be reconciled with *Price*'s important principle that courts may not adjudicate the merits of the plaintiffs' claims in the guise of a certification ruling. *Price*, 11-0853, p. 15, 79 So.3d at 972.

The majority's reliance on *Doe*, *Albe v. City of New Orleans*, 14-1013 (La. App. 4 Cir. 7/29/15), 174 So.3d 212, and *Chiarella v. Sprint Spectrum, LP*, 04-1433 (La. App. 4 Cir. 11/17/05), 921 So.2d 106, does not compel affirmance. Those cases are materially different.

*Doe* involved allegations of clandestine videotaping at a single fitness club, where the plaintiff could not demonstrate that any defined set of women suffered actual harm or even knew of the camera's existence. 12-1566, 12-1572, 12-1580,

3

pp. 17-19, 112 So.3d at 834-35. The Supreme Court held that the plaintiff failed to show a definable group of aggrieved persons because there was no evidence that more than a handful of women were even aware of the invasion, much less injured by it. *Id.*

In the case *sub judice*, by contrast, the class is limited to those who not only received Notices of Violation but actually paid money under the ATES Program. Payment of a civil penalty is itself an objective, economic consequence of the allegedly defective municipal enforcement scheme. Unlike *Doe*, we are not speculating whether a hidden camera touched the lives of unknown members of the public. We are dealing with a closed group of identified payors whose payments are tracked in the City's and ATS's own records.

*Albe* likewise involved a narrower, more attenuated claim and involved a subset of recipients of a delinquency notice that included "possible jail time" language. 14-1013, p. 5, 174 So.3d at 216-17. This Court emphasized that not every recipient of such a notice was injured by the language and that many may never have seen it, and some may have paid for reasons entirely independent of the notice's phrasing. 14-1013, pp. 10-13, 174 So.3d at 219-21. The plaintiffs in *Albe* offered only the number of mailed notices, and they did not provide proof of an objectively defined group of persons who had suffered an economic loss under an allegedly invalid collection regime.

In the case *sub judice*, the plaintiffs do not rely on the mere fact that notices were mailed. They identify a class of those who paid money. In other words, they link the challenged conduct (the uniform use of Notices of Violation and an Affidavit of Non-Liability that allegedly omit mandatory defenses and misstate the nature of NOPD review and camera calibration) to a common, concrete economic consequence, that is, the payment of civil penalties. Whether the civil penalties

4

were lawfully imposed is a common merits question, and it should not be conflated into the numerosity analysis.

*Chiarella*, too, is distinguishable. There, the injury was dissatisfaction with the quality of wireless service, and it was both subjective and highly variable. 04-1433, p. 19, 921 So.2d at 119-20. The court concluded that "a court cannot assume that all of the Sprint PCS wireless subscribers were unhappy with their service," and that proof of 60,000 subscribers was not proof of 60,000 aggrieved customers. *Id.*

In the case *sub judice*, the injury is not dissatisfaction. It is payment of a fine pursuant to a highly standardized municipal enforcement program. No one "subscribes" to traffic fines. The proposed class is limited to those who have already paid under that program. They are, by definition, the persons whose economic position was affected by ATES. Whether the City and ATS were entitled to collect those sums under an ordinance that this Court has already held invalid for a significant time period[1] is a question common to them all.

In short, *Doe*, *Albe*, and *Chiarella* stand for the unremarkable proposition that numerosity is not satisfied by raw headcounts separated from any proof of a definable group of people who experienced the same type of harm. They do not require plaintiffs, at the certification stage, to prove individualized fraud reliance or to trace each payment dollar to a particular misrepresentation. By demanding that level of individualized proof for numerosity, the majority misapplied those decisions.

I also do not agree that the deposition testimony of Henry Klein ("Klein") defeats numerosity or renders this class inherently undefinable. The district court emphasized that Klein "knew of the alleged flaws/fraud in the Notices" but chose

---

[1] *See McMahon v. City of New Orleans*, 18-0842-46, pp. 6-7 (La. App. 4 Cir. 9/4/19), 280 So.3d 796, 800-01.

to negotiate a discounted "global settlement" rather than challenge the program. That evidence is undoubtedly relevant to Klein's individual fraud claim and to any unique defenses the City and ATS may raise against him. It may also bear on typicality and adequacy of representation. But it does not demonstrate that no definable group of aggrieved payors exists, or that numerosity is lacking.

This suit has been pending for nearly a decade, and multiple plaintiffs were added and dismissed over time. The fact that, as of October 2024, only Klein remained does not mean that no one else is aggrieved, or that no one else can be added who more closely mirrors the range of class members' experiences, including those who attempted to appeal through the administrative process. To treat the happenstance of pleadings and exceptions as a structural bar to class treatment is, in my view, inconsistent with the remedial purpose of the class action mechanism, particularly in instances where individual suits are economically impractical.

Because the majority affirms solely on numerosity, it does not reach commonality, typicality, adequacy of representation, or the objective definability requirements of Article 591(A)(2-5), nor does it consider whether the case satisfies any of the Article 591(B) categories (most notably, 591(B)(3) concerning predominance and superiority).

In my view, the record supports at least a preliminary finding that the remaining claims satisfy Article 591(A)(2-5) and fit within Article 591(B)(3).

The content of the remaining claims is not a mix of individualized grievances. It is a challenge to the uniform design and administration of the ATES Program. Among the common questions identified in the pleadings and the district court's own reasons are as follows: (1) whether NOPD officers, in fact, reviewed the evidence and made a probable cause determination before ATS mailed Notices of Violation, as the notices state; (2) whether the City's use of an Affidavit of Non-

Liability that lists only two of six statutory defenses is misleading or fraudulent, and whether that form unlawfully steers vehicle owners away from the full range of defenses provided by the ATES Ordinance; (3) whether the Affidavit of Reliability used in the administrative process is signed by NOPD officers without personal knowledge of calibration and accuracy, and whether that practice violates procedural due process; and (4) whether, as a matter of law, civil penalties collected under such a structure are subject to restitution, disgorgement, or other remedies.

Those questions do not turn on who happened to read which sentence or on the individual psychology of reliance. They turn on the design, legality, and administration of a municipal enforcement system that operates identically for every class member. Answering them one way or the other will generate common answers "apt to drive the resolution of the litigation." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011).

Louisiana's Legislature has cautioned that certification is improper "for the purpose of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class," La. C.C.P. art. 591(C), and that courts "shall not order the class-wide trial of issues dependent for their resolution on proof individual to a member of the class, including but not limited to … the individual knowledge or reliance of the member." La. C.C.P. art. 592(E)(5). Those provisions, however, address how a certified class may be tried, not whether a class may be certified at all.

Nothing in Articles 591(C) or 592(E)(5) prohibits a court from certifying a class for the adjudication of issues that are, in fact, common, such as the legality of a uniform municipal enforcement program, the truth or falsity of standardized representations made in Notices of Violation and Affidavits, or the availability of program-wide equitable relief. Individual issues of reliance, causation, and

7

damages can be reserved for later phases, addressed through subclasses, or resolved in a claims administration process if liability is established.

This is exactly the type of case in which the class mechanism serves its intended function. The average ATES penalty is relatively modest, and few citizens will undertake the cost and risk of litigating an individual fraud or due process claim against the City and its contractor over a single traffic camera ticket. Absent a class action, an allegedly unlawful enforcement scheme, if proven, may persist for years, generating millions in revenue while evading meaningful judicial review.

In conclusion, I would hold that the district court erred, as a matter of law, in conflating numerosity with proof of individualized reliance and in requiring, at the certification stage, proof that each class member read and relied upon specific portions of the Notice of Violation or the Affidavit of Non-Liability. The undisputed evidence of a single, standardized enforcement program that generated over 800,000 citations and $88 million in payments by persons who fall within an objectively defined class suffices to show that there exists a definable group of aggrieved payors and that joinder is impracticable.

Because numerosity is satisfied, we should proceed to evaluate the remaining Article 591(A) factors and the predominance and superiority requirement of Article 591(B)(3), at least for a class limited to payors under the ATES Program and, on this record, we can conclude in plaintiffs' favor.

Accordingly, I would reverse the judgment denying class certification and remand with instructions to certify an appropriately defined class of persons and entities who, from February 2007 forward, received Notices of Violation under the ATES Ordinance and paid civil penalties or related fees, and to enter a case-management order that phases common liability issues and preserves for later

proceedings any individualized questions of reliance, causation, prescription, and damages.

For these reasons, I respectfully dissent.