Agnes EWH, Plaintiff,

v.

MONARCH WINE COMPANY, INC. and Distillery, Rectifying, Wine and Allied Workers Union Local 1, Defendants.

No. 76 C 128.

United States District Court, E. D. New York.

Jan. 17, 1977.

Gerald Schilian, New York City, for plaintiff.

Buchman & Buchman by William J. Poltarak, New York City, for defendant Monarch Wine.

Victor Feingold, New York City, for defendant Union.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

This action is designated in the complaint as a class action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, on behalf of all female employees against defendants Monarch Wine Co., Inc. ("Monarch") and Distillery, Rectifying, Wine and Allied Workers Union, Local 1, AFL–CIO ("Local 1"), to remedy alleged discrimination on the basis of sex. Plaintiff, an employee of Monarch prior to a layoff in 1973, alleges that Monarch maintains discriminatory classification and seniority systems which result in (1) periodic layoffs of females while males with less seniority are retained, (2) the lack of females in supervisory positions, and (3) the assignment of females to lower-paying, less desirable jobs. Plaintiff also alleges the Union's failure to fairly and properly represent its female members. Plaintiff seeks a declaratory judgment, injunctive relief, and monetary damages on behalf of the alleged class.

Plaintiff now moves under Rule 23(c)(1), F.R.Civ.P., for an order certifying this as a class action. The class would be composed

of all females employed by Monarch and represented by Local 1 who have been, are, or might in the future be adversely affected by the discriminatory practices alleged in the complaint.

The parties appear to agree on the following facts. On November 1, 1968 Monarch, which produces, bottles and distributes kosher wines under the brand name "Manischewitz", hired plaintiff to do "light work" on the bottling line. At that time all female employees were assigned to do "light work", while males performed "heavy work" such as lifting, lugging and stacking bottles. Due to the seasonal nature of Monarch's business, each year after the Passover season Monarch has laid off a substantial number of employees, especially those doing "light work." Plaintiff was among those laid off for varying periods in 1968, 1969, 1970 and 1973. She asserts that after the last three layoffs she complained in vain to Local 1 that men with less seniority than she continued to work during her layoffs and even performed work which she had been doing.

When plaintiff and another employee, Anna Podgurski, requested reinstatement after the 1973 layoff, which took place on February 28, Monarch pointed out that they could "bump" any employee with lower seniority. Podgurski exercised her seniority rights and received a position in the "heavy work" category, but plaintiff refused because she was unable to do such work.

On May 29, 1973 plaintiff filed charges of sex discrimination with the Equal Employment Opportunity Commission ("EEOC"). On June 15, 1973, following protests from the female employees that "heavy work" employees were doing "light work", Monarch and Local 1 entered into a "Memorandum of Understanding." The company and union therein recognized that it had been and continued to be Monarch's practice that during periods of substantial layoffs employees doing "heavy work" could not do "light work" and those who were laid off "light work" could bump employees with less seniority assigned to do "heavy work", provided they could perform such work.

Most of the female employees, including plaintiff, signed this memorandum.

On February 28, 1975 EEOC determined there was reasonable cause to believe that plaintiff had been subjected to sex discrimination. Following conciliation efforts, Monarch, Local 1 and EEOC entered into a conciliation agreement on June 5, 1975, providing that sex-segregated job categories would be eliminated and layoffs would be made in accordance with an employee's plant-wide seniority. Plaintiff rejected this agreement as inadequate to remedy the discriminatory practices. Following receipt of EEOC's notice of her right to sue, she timely filed the present action on January 21, 1976.

Rule 23(a) establishes four prerequisites for the maintenance of a class action: (1) that the class be so numerous as to make joinder of all members impracticable; (2) that questions of fact and law common to the class are raised; (3) that the claims of the representative party be typical of those of the class; and (4) that the class representative adequately and fairly represent the class. In addition, Rule 23(b)(2) requires a finding that the defendants have acted or refused to act on grounds generally applicable to the class.

■ Title VII actions such as this are often class actions, for the alleged discriminatory practices usually affect large groups of employees. Nevertheless, Title VII plaintiffs are not exempt from the Rule 23 requirements.

Defendants' principal arguments for opposing class action certification are (1) that the numerosity requirement is not met, and (2) that plaintiff's interests are antagonistic to those of the other members of the prospective class. Consideration of the numerosity requirement alone is sufficient to establish that class action certification should be denied.

■ At the time of the allegedly discriminatory layoff in 1973, plaintiff was one of 34 females performing "light work" for Monarch. Since the alleged discriminatory practices are continuing, she urges that fu-

ture employees be included in the class since they will be affected by those practices. See *Kohn v. Royall, Koegel & Wells,* 59 F.R.D. 515 (S.D.N.Y.1973), *appeal dismissed,* 496 F.2d 1094 (2 Cir. 1974). Plaintiff estimates the total number of class members as "probably in excess of fifty." Plaintiff's Brief at 11.

The Second Circuit has declared that "it is fundamental that those seeking to maintain an action as a class action must make a positive showing that it would be impracticable to deny the prayer." *Demarco v. Edens,* 390 F.2d 836, 845 (2 Cir. 1968).

There is no "magic number" which automatically determines whether or not the numerosity requirement is met. A court must use its discretion to decide the issue on the basis of the circumstances of each case.

 Plaintiff in the present action has not met the burden of showing the impracticability of joinder. The class would consist of between 34 and 50 members. "Joinder has been held preferable where the number of prospective members lies between 30 and 40." *Moscarelli v. Stamm,* 288 F.Supp. 453, 463 (E.D.N.Y.1968); *Nesenoff v. Muten,* 67 F.R.D. 500 (E.D.N.Y. 1974). In addition, the geographical location of the potential plaintiffs is a major factor to be considered in determining whether joinder is impracticable. *Demarco v. Edens, supra.* Here Monarch's records show that 33 of the 34 women doing "light work" in 1973 lived in the Eastern District at that time, and plaintiff has not established that they have dispersed since then.

Local 1 also points out that 9 of these 34 employees have signed a statement by which they elect to be excluded from the class action. Had these statements been in the form of affidavits, they might have reduced the number of class members plaintiff could claim to represent. See *Shulman v. Ritzenberg,* 47 F.R.D. 202 (D.C.D.C.1969); see also *Nesenoff v. Muten, supra.* Since the statements in this case were signed at a union meeting and are not in the form of affidavits, the court will not rest its decision on them.

 The small number of potential plaintiffs, their geographical proximity, and the inability of plaintiff to show the impracticability of joinder adequately establishes that the class action should not be certified. The court rejects the facile argument that joinder is automatically impracticable because the action involves unknown future employees whose joinder would be impossible. See, *e. g., Jack v. American Linen Supply Co.,* 498 F.2d 122 (5 Cir. 1974).

Accordingly, plaintiff's motion for certification of this action as a class action is denied.

SO ORDERED.