**In re W.T. GRANT COMPANY, Bankrupt.**

**Bankruptcy No. 75 B 1735.**

United States Bankruptcy Court, S.D. New York.

Nov. 4, 1982.

</div>

**422**

Weil, Gotshal & Manges, New York City, for trustee.

Reich, Rosen, Barrison & Felzen, New York City, for Frances M. Massey.

## MEMORANDUM AND ORDER

JOHN J. GALGAY, Bankruptcy Judge.

In this motion, Frances M. Massey, former employee of the bankrupt, W.T. Grant ("Grant"), has moved for class certification, urging this Court to name her class representative of former Grant employees who were eligible for retirement benefits at the time of their termination and denied the full, regular severance pay entitlement. Massey contends that a class action suit is the only effective mechanism for her and similarly situated former employees to prosecute their severance pay claims since, she argues, it would be impracticable to prosecute their claims individually. Massey further asserts that the putative class satisfies the prerequisites for class action certification that are delineated in Rule 23 of the Federal Rules of Civil Procedure ("F.R.Civ. P."), and, accordingly, petitions this Court to grant class certification pursuant to Rules of Bankruptcy Procedure 723 and 914 ("Bankruptcy Rules"). The Trustee, Charles G. Rodman, opposes claimants application for class certification arguing that

a class action is not appropriate in a simple, uncomplicated, contested matter in a bankruptcy case. The Trustee also contends that class certification should be denied since the claimant has failed to satisfy the prerequisites of F.R.Civ.P. 23. Having read the papers of both parties and having reviewed the applicable legal standards, this Court denies claimants application for class action certification.

*Facts*

The roots of the instant litigation can be traced to October 2, 1975. On that date Grant filed a petition for arrangement under Chapter XI, Section 322 of the Bankruptcy Act and Bankruptcy Rule 11–6. Subsequently, on April 13, 1976, Grant was adjudicated a bankrupt. As a result of its bankruptcy, Grant was forced to liquidate all its retail outlets and terminate the employment of approximately 75,000 individuals. Of those employees terminated, approximately 41,000 eventually filed proofs of claim against the bankrupt estate, seeking severance pay benefits in accordance with Grant's pre-petition wage and compensation package.[1]

By decision dated June 22, 1978, this Court determined that such severance pay claims were to receive priority as an expense of administration under Bankruptcy Act section 64(a)(1). *See In re W.T. Grant,* 17 C.B.C. 841 (Bankr.S.D.N.Y.1976), *aff'd* 474 F.Supp. 788 (S.D.N.Y.1979), *aff'd,* 620 F.2d 319 (2d Cir.), *cert. denied,* 446 U.S. 983, 100 S.Ct. 2963, 64 L.Ed.2d 839 (1980). On October 3, 1980, this Court authorized the trustee to make distributions in full satisfaction of such severance pay claims. Accordingly, the trustee calculated each former employee's severance pay entitlement and made distributions where appropriate. Where the Trustee's computation did not agree with the amount set forth in an employee's claim, and the dispute could not be resolved, the Trustee interposed an objection to the claim. Such an objection was interposed to Massey's claim, hence the in-

1. Under Grant's wage and compensation package, severance pay benefits were linked to an employee's length of service; thus as an employee's term of service increased, the amount of his potential severance pay benefits also increased.

stance litigation between Massey and the trustee.

Claimant Massey was one of 3,393 Grant employees who were eligible for retirement benefits when discharged as a result of Grant's bankruptcy. The Trustee contends that under Grant's pre-Chapter XI personnel policies and procedures, which govern here, such employees are entitled to only one-half of the regular severance pay benefit. Massey disagrees, arguing that Grant's pre-Chapter XI policies and procedures provide that any employee who is permanently laid off is entitled to the full, regular severance pay benefit, regardless of whether the employee was also eligible for retirement benefits at the time of his discharge. In pressing this claim, Massey seeks to proceed as representative of a class consisting of all those former Grant employees who were eligible for retirement benefits at the time of their discharge and were denied the full, regular severance pay benefit.

Of the 3,393 potential members of this proposed class, approximately 3,331 have received and negotiated dividend checks, the amount of which represents each employee's regular severance pay benefit. Each check bears the following waiver:

> In full satisfaction and settlement of any and all claims against the bankrupt estate of W.T. Grant Company 75 B 1735 (S.D.N.Y.) in relation to or in any way based upon claims for severance pay benefits.

The Trustee argues that these 3,331 former employees are not properly members of the proposed class since they have already settled their claims against Grant. Massey demurs, contending that the waiver "should be held ineffective against those former employees who cashed their checks without knowledge of their entitlement to full termination pay benefits and without advice of counsel." *Petitioners Reply Memorandum* at p. 14.

*Issues*

The questions then, before this Court are: (1) whether the proposed class of former employees should be certified with Massey as representative; and (2) whether those former employees who signed waivers and cashed dividend checks are properly members of such a class.

*Discussion*

■ Rule 723 of the Bankruptcy Rules provides that F.R.Civ.P. 23, which governs class actions, applies to adversary proceedings of the Bankruptcy Court. The Trustee's instant objection, however, is not an adversary proceeding but is, instead, a contested matter under the Bankruptcy Rules.[2] The distinction is significant since most of the Bankruptcy Rules of Part VII, including Rule 723 do not ordinarily apply to contested matters and, consequently, there is usually no procedural basis for prosecuting a contested matter as a class action. However, when litigation of a contested matter becomes "sufficiently serious and complicated," the Court, may, under Bankruptcy Rule 914, apply any of the Part VII Rules, including 723, to ensure that the "elemental requisites of due process [are] afforded all parties." Advisory Committee Note, [1976] Collier Pamphlet Ed. pt. 2 at p. 276. The threshold question, then, is whether it is appropriate to apply Rule 723 to the instant contested matter.

In *In re REA Express, Inc.,* 10 B.R. 812 (Bkrtcy.S.D.N.Y.1981), a proceeding concerning a similar contested matter, this Court considered the application of approximately 1,000 non-union employees of the bankrupt to respond as a class to the trustee's general objections to their claims for holiday, vacation, and severance pay. Noting that "a unified response appears to be the only means by which all non-union employees may meaningfully participate in the objection hearings," *id.* at 813, this Court ruled that the matter merited the application of Rule 723. Underlying this ruling

---

**2.** According to Bankruptcy Rule 306(d), an objection to a claim is not an adversary proceeding unless a demand for relief of the type specified in Rule 701 is joined to the objection.

Since no such demand for relief has been joined, the Trustee's objection remains a contested matter.

was the recognition that the former employees of a bankrupt are often thrust into a uniquely vulnerable position as involuntary creditors with little or no financial means to individually pursue their claims and, therefore, should be afforded some procedural protections not ordinarily afforded other parties under the Bankruptcy Rules.

Following this analysis, this Court, exercising its discretion under Rule 914, finds that the present contested matter also merits the application of Rule 723. Just as in *REA,* this matter concerns an issue central to the wage claims of, perhaps, thousands of former employees of the bankrupt. And, should the Trustee's instant objections be sustained, the claims of these employees will also undoubtedly be adversely affected. Thus, we think "it is only just that [the] employees be empowered to respond ... on a unified basis." *In re REA Express, Inc.,* 10 B.R. at 813, assuming, of course, that claimants meet the class action prerequisites prescribed in F.R.Civ.P. 23. Accordingly, we now turn to the question whether Massey has, in fact, satisfied the preconditions for federal class action certification.

■ Under the Federal Rules of Civil Procedure, the party requesting a class ac-

tion must shoulder the burden of "establish[ing] his right to do so." 3B *Moore's Federal Practice* ¶ 23.02 p. 23–96 (2d ed. 1982). Accordingly, Massey must demonstrate that the four prerequisites of Rule 23(a), as well as one of the three standards of Rule 23(b) have been satisfied before she can maintain this class action suit.[3] The first prerequisite under Rule 23(a) provides that the class must be "so numerous that joinder of all members is impracticable." Massey contends that she easily meets this numerosity requirement since, she maintains, the putative class consists of at least 3,393 former Grant employees "undisputably scattered across the country." *Petitioner's Reply Memorandum* at p. 21. The Trustee, on the other hand, points out that of these 3,393 former employees who were eligible for retirement benefits at the time of Grant's bankruptcy, 3,331 have already settled their severance pay claims and have signed waivers evidencing such settlements. Of the remaining potential class members, only 33 have disputed the Trustee's calculations of their severance pay claims. Thus, the Trustee argues, the putative class properly comprises only 33 members, a number too small to satisfy the numerosity require-

---

**3.** The pertinent provisions of F.R.Civ.P. 23 provide:

(a) Prerequisites to Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a prac-

tical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

ment. We agree with the Trustee's position.

▮ Under F.R.Civ.P. 23, the class representative must be a member of the class he claims to represent. "Stated another way, the plaintiff must have standing to represent the class." 3B *Moore's Federal Practice* ¶ 23.04[2] p. 23–120–122 (2d ed. 1982). Thus, in *Bailey v. Patterson,* 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962), the Supreme Court held that individuals who had not been prosecuted or threatened with prosecution under Mississippi's "breach of peace" statutes lacked standing to maintain a class action to enjoin criminal prosecution under such statutes since they simply "cannot represent a class of whom they are not a part." *Id.* at 32–33, 82 S.Ct. at 550–551 (citation omitted).

Similarly, in *Greenstein v. Paul,* 275 F.Supp. 604, 605 (S.D.N.Y.1967), the District Court ruled that a stockholder who did not sell his stock and therefore had "no standing to sue on his own account, [could] not maintain a class action on behalf of those stockholders who did sell their stock because plaintiff [was] not a member of the class." *Accord, Kramer v. Union Free School District No. 15,* 282 F.Supp. 70 (E.D.N.Y.1968).

Accordingly, in the instant case, Massey cannot represent those 3,331 former Grant employees who have already settled their severance pay claims. She is simply not a member of their class. Massey's dispute with the Trustee concerns only the proper interpretation of Grant's pre-chapter XI personnel policies and procedures as they relate to severance pay benefits for employees of retirement age. But, before those employees who settled their severance pay claims can even reach the issue Massey raises issue, they must first hurdle the obstacle of their claim waivers. That is, they must give some justification for a reconsideration of their claims. Massey argues that the waivers given by these 3,331 former employees should be held ineffective since "at

the very least, [there was] a case of mistake on the part of the former employees, [or] [a]t worst, the conducts of the Trustee was tantamount to fraud." *Petitioner's Reply Memorandum* at p. 14. These allegations may well be accurate, but Massey has no standing to maintain them. She did not waive her claim to the full severance pay benefit, thus, she cannot sue on behalf of those who have signed such a waiver and settled their claims. Note that we do not reach the issue of the validity of the claim waivers. If mistake, fraud or overreaching did, in fact, induce some former Grant employees to accept manifestly unfair severance pay settlements, they are free, to plead their cases before this Court. We merely hold that Massey lacks the standing to represent these individuals.

▮ The putative class, then, which Massey could represent, properly comprises only those 33 former Grant employees who were of retirement age at the time of their discharge and who have disputed the Trustee's calculations of their severance pay claims.

▮ The numerosity requirement of F.R.Civ.P. 23(a) imposes no absolute minimum requirement. "There is no 'magic number' which automatically determines whether or not the numerosity requirement is met. A Court must use its discretion to decide the issue on the basis of the circumstances of each case." *Ewh v. Monarch Wine Co., Inc.,* 73 F.R.D. 131, 133 (E.D.N.Y. 1977) (group of 34 putative plaintiffs was insufficient to satisfy numerosity requirement). Joinder is preferable to a class action when the number is prospective plaintiffs is too few. *Moscarelli v. Stamm,* 288 F.Supp. 453, 463 (E.D.N.Y.1968) (joinder preferred if prospective class members number 30 to 40); *accord, Glover v. McMurray,* 361 F.Supp. 235, 241 (S.D.N.Y.1973) ("A group as small as fifteen or thirty cannot maintain a class action unless special circumstances make the joinder of members impracticable.").[4]

---

4. In determining impracticality of joinder, the geographic location of potential plaintiffs is a key factor. *See Ewh v. Monarch Wine Co.,*

*Inc.,* 73 F.R.D. at 133; *Glover v. McMurray,* 361 F.Supp. at 241. However, Massey has not offered any geographic location of the 33 po-

Based on the foregoing analysis, this Court finds that under F.R.Civ.P. 23 Massey has failed to satisfy the first prerequisite to a class action, namely the numerosity requirement. This finding alone is sufficient to defeat Massey's application for class action certification. "Consideration of the numerosity requirement alone is sufficient to establish that class action certification should be denied." *Ewh v. Monarch Wine Co., Inc.,* 73 F.R.D. at 132.

Finally, Massey has requested that this Court direct the creation of a common fund by the Trustee. *See Petitioners Memorandum of Law* at p. 24 ("Point III[:] In the event the Petitioner is successful, the Court should direct the Trustee to pay the additional benefits into a common fund"). Such a request is premature and, is denied without prejudice to renewal at an appropriate time.

*Conclusion*

For the foregoing reasons, Massey's petition for class action certification is denied. Massey's request for the creation of a common fund is denied without prejudice.

It is so ordered.

tential plaintiffs and thus has "not met the burden of showing the impracticability of join-

der." *Ewh v. Monarch Wine Co., Inc.,* 73 F.R.D. at 133.