| PAULETTE STOKE, RICQUEL | * | NO. 2025-CA-0258 |
| HALE, RODNEY THOMAS, | | |
| JOINELL STOKES, | * | |
| ANGELLICA BOZANT, ALVIN | | COURT OF APPEAL |
| JONES AND CAROL JONES | * | |
| | | FOURTH CIRCUIT |
| VERSUS | * | |
| | | STATE OF LOUISIANA |
| THE CITY OF NEW | * * * * * * * | |
| ORLEANS, THE HONORABLE | | |
| MITCH LANDRIEU, THE | | |
| HONORABLE STACY HEAD, | | |
| THE HONORABLE JASON | | |
| ROGERS WILLIAMS, THE | | |
| HONORABLE SUSAN G. | | |
| GUIDRY, THE HONORABLE | | |
| LATOYA CANTRELL, THE | | |
| HONORABLE NADINE M. | | |
| RAMSEY, THE HONORABLE | | |
| JARED C. BROSSETT, ET AL. | | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2016-02338, DIVISION "N-8"
Honorable Ethel Simms Julien, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *
(Court composed of Judge Joy Cossich Lobrano, Judge Rosemary Ledet, Judge
Nakisha Ervin-Knott)


**LOBRANO, J., DISSENTS WITH REASONS**


James M. Williams
Matthew A. Sherman
CHEHARDY, SHERMAN, WILLIAMS, RECILE, & HAYES, LLP
One Galleria Boulevard, Suite 1100
Metairie, LA 70001

      COUNSEL FOR PLAINTIFF/APPELLANT

Kim M. Boyle
Allen C. Miller, Sr.
Ashley J. Heilprin
Jesse C. Stewart
PHELPS DUNBAR

365 Canal Street, Suite 2000
New Orleans, LA 70130

       ATTORNEYS FOR DEFENDANT/APPELLEE, AMERICAN TRAFFIC
       SOLUTIONS, INC.


James M. Garner
Stuart D. Kottle
Hannah L. Brewton
SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.
909 Poydras Street, Suite 2800
New Orleans, LA 70112

Ike Spears
SPEARS & SPEARS
909 Poydras Street, Suite 1825
New Orleans, LA 70112

Corwin St. Raymond
Shawn Lindsay
CITY ATTORNEY
1300 Perdido Street
City Hall-Room 5E03
New Orleans, Louisiana 70112

       ATTORNEYS FOR DEFENDANT/APPELLEE, THE CITY OF NEW
       ORLEANS

                                       **AFFIRMED**
                                **December 17, 2025**

This is a proposed class action arising out of the enforcement of the City of New Orleans' Photo Safety Program—also known as the Automated Traffic Enforcement System (the "ATES Program").[1] From the trial court's January 7, 2025 judgment denying a motion to certify a proposed class, the sole remaining proposed class representative (plaintiff)—Henry Klein ("Mr. Klein")—appeals. We affirm.

**Factual and Procedural Background**

The City of New Orleans (the "City"), in February 2007, implemented its Photo Safety Program. Six months later, the City awarded the traffic camera contract to American Traffic Solutions, Inc. ("ATS").[2]

---

[1] The Photo Safety Program is a system for enforcing and penalizing traffic signal and speed limit violations by automated means. To implement the program, the City amended Chapter 154 of the City Code (Ordinance No. 22526) (the "ATES Ordinance").

[2] Before 2016, when this suit was filed, two changes were made to the Photo Safety Program. First, in 2010, the City changed the entity responsible for administering the program from the Department of Public Works ("DPW") to the New Orleans Police Department (the "NOPD"). *See McMahon v. City of New Orleans*, 18-0842-46, p. 7 (La. App. 4 Cir. 9/4/19), 280 So.3d 796, 800-01 (holding that "the ATES was an invalid ordinance, without effect, until it was placed under the NOPD on November 4, 2010," and that "the trial court correctly ruled for the immediate return of the $25,612,690.32 in ATES fees and fines collected from tickets issued to Subclass1 prior to that date"). The other change was that, in 2012, the Legislature amended former La. R.S. 13:2501.1 to extend Traffic Court's jurisdiction to include appeals from an

1

ATS's role as the City's traffic camera contractor was defined to include: installing and operating traffic cameras at various locations in the City to identify and photograph vehicles; recording violations and reporting them to the City; identifying vehicle owners and delivering Notices of Violation; and processing payments of civil penalties and requests for appeal.[3]

This suit was filed in 2016, and it has been pending for almost a decade. Eleven proposed class representatives (plaintiffs) have been named; and six iterations of the class action petition—an original and five supplemental and amending petitions—have been filed. For purposes of this appeal, the relevant procedural history begins in December 2023, when a motion to certify was filed by Mr. Klein and seven other proposed class representatives (plaintiffs). In their motion, they averred that each of them had received a Notice of Violation pursuant to the Photo Safety Program and that each of them had paid a fine. They sought to certify a class consisting of:

> All individuals, business entities, and other persons or entities who received a Notice of Violation pursuant to the New Orleans Automated Traffic Enforcement System Ordinance, as set forth in New Orleans Ordinance No. 22526, from the date of inception in February 2007 through the present date, and who subsequently paid any fine, fee, civil penalty, costs or other payment in full or in partial satisfaction of

administrative officer's decision concerning traffic violations under the Photo Safety Program.

[3] Simply stated, the Photo Safety Program was designed to operate as follows. The offending vehicle's license plate is matched to its registered owner. The evidence that ATS gathers is submitted to the NOPD for review. An NOPD officer reviews the evidence and determines whether probable cause exists to issue a Notice of Violation to the vehicle's registered owner. If the NOPD officer finds a violation, ATS mails a Notice of Violation to the vehicle's owner. The Notice of Violation provides the vehicle's owner with four standard payment options—online, by phone, by mail, or in person. The Notice of Violation also instructs the vehicle's owner regarding the procedure to invoke the administrative appeal process. The vehicle's owner is directed to ATS's website. ATS posts on its website an Affidavit of Non-Liability for the vehicle's owner to print.

the Notice of Violation, and/or any costs associated with appealing the Notice of Violation.

The motion to certify was set for hearing in October 2024.

Meanwhile, the number of proposed class representatives (plaintiffs) winnowed to one—Mr. Klein. Given this change, the one plaintiff—Mr. Klein—and the two defendants—the City and ATS—filed a joint motion to submit the motion to certify on briefs only. The trial court granted the joint motion. Following the filing of briefs, the trial court rendered judgment, in January 2025, denying the motion to certify.

In its reasons for judgment, the trial court provided the following summary of the relevant factual and procedural background:

> Since this case was filed in 2017,[4] various Plaintiffs have voluntarily withdrawn while others have been added to the suit. There were four Plaintiffs remaining until October 11, 2024, when the court granted in part Exceptions of No Right of Action and Prescription filed on behalf of Defendants. At this point, *the sole remaining Plaintiff is [Mr.] Klein. . . .*
>
> Mr. Klein an attorney who received several traffic tickets[5] and personally negotiated a "global settlement" of the tickets with the

---

[4] The initial petition was filed on March 7, 2016; Mr. Klein was first added as a plaintiff in the Second Supplemental and Amended Petition that was filed in 2017.

[5] In the Fifth Supplemental and Amended Petition for Class Action, it is alleged that Mr. Klein has received a total of thirty Notices of Violation; specifically, the petition states as follows:

HENRY KLEIN, received multiple [thirty] Notice of Violations of traffic camera violations mailed to him from ATS alleging the following violations occurring on 10/04/08 (red light violation), 02/16/09 (speeding), 10/22/10 (speeding), 12/24/10 (speeding), 01/18/11 (speeding), 04/30/11 (red light), 07/10/11 (speeding), 11/11/11 (speeding), 04/09/14 (red light), 05/03/14 (speeding), 07/10/14 (speeding), 08/04/14 (speeding), 08/10/14 (speeding), 08/23/14 (speeding), 09/06/14 (speeding), 09/19/14 (red light), 09/19/14 (speeding), 11/17/14 (speeding), 11/23/14 (red light), 12/30/14 (speeding), 01/01/15 (speeding), 03/03/15 (speeding), 03/11/15 (speeding), 03/18/15 (red light), 05/06/15 (speeding), 07/04/15 (speeding), 09/03/15 (speeding), 11/23/15 (speeding), 11/29/15 (speeding), 12/31/15 (speeding). The City and ATS in committing the fraud in the Notice of Violation, in the Affidavit of Non-Liability and in deliberately not producing the two affidavits required at the Administrative Hearing

Defendant, City at a "substantial discount"[--for about $2,000.00]. . . .
He testified that although he knew of the alleged fraudulent deficiencies
within the ATES, he still settled and paid the Defendant City."
[Emphasis in original].[6]

Based on the pleadings and prior judgments, the trial court observed that

only the following trio of claims remained:

- *Fraud premised on alleged deficiencies in the Notices of Violation*—
  Mr. Klein asserts the Notices of Violation are fraudulent because an
  NOPD officer does not review the notices before ATS mails them
  although the officer signs—or at least the officer's name is printed on
  the notice—stating that the officer found probable cause or had a

---

made those misrepresentations with the intention to deceive Mr. Klein, which he
reasonably relied upon in making payment of the unwarranted global settlement
fine in excess of $2,000.00, thereby suffering injury as a result, as well as those
similarly situated.

[6] The trial court cited Mr. Klein's deposition testimony. As the City and ATS point out, the
relevant excerpt of Mr. Klein's deposition testimony is as follows:

Q. Can you look at your interrogatory response and identify any of those facts that
you think you may have [known when you paid your settlement]?

A. Sure. I knew that these -- that these Notices of Violation were either not signed
at all, or signed—or generated without any rigor as to whether they were properly
signed by officers. I did not believe that those officers—if they signed these
documents, had the necessary knowledge to sign a truthful document. I also did not
believe that they received an oath. I'm well aware of the importance of an oath for
an affidavit. So, if you don't do it under oath, you can't be punished. So, if no oath
is administered, then the entire issue that sets forth the criminality of a false
document is an empty threat. Let me look again for more.

I did not believe that anybody did anything to inform the Administrative Hearing
Center of anything. In fact, I'm not so sure that such a center exists. And I'm not
so sure that it has a policy or a pattern of receiving this information. And being the
City of New Orleans, I doubt that the information was accurately handled.

I knew that NOPD officers who[se] name appeared at the bottom of the Notice[s]
of Violation didn't review or sign the Notice[s] of Violation generated.

I knew these things. I knew there was a lot of flaws. But I did not want to start a
war with the lady, Miss [Veronica] Henry, I just wanted to get rid of the outstanding
bill.

Mr. Klein acknowledged in his deposition testimony that he never viewed the Affidavit of
Non-Liability that appears on ATS's website and that none of the affirmative defenses set
forth in the ATES Ordinance applied to his violations. Mr. Klein also acknowledged that
his driver's license was suspended for nonpayment of state income taxes.

According to the ATS' representative's affidavit, Mr. Klein has received a total of
eighty-four notices of violation since the inception of the Photo Safety Program in 2007.

reasonable belief that a violation occurred; and the violations are reviewed in less time than it takes for the twelve second video to play and many are reviewed faster than allowed by NOPD's policies and procedures which Mr. Klein asserts calls into question the accuracy and reliability of the review process;

- *Fraud premised on alleged omissions in the Affidavit of Non-Liability*—Mr. Klein asserts the Affidavit of Non-Liability is fraudulent because it lists only two of the six affirmative defenses to the imposition of a civil penalty that are set forth in the ATES Ordinance;[7] and

- *Procedural due process violations related to the administrative hearing*—Mr. Klein contends that the Affidavit of Reliability that allegedly confirms that the cameras are properly calibrated is signed by an NOPD officer who in fact has no firsthand knowledge of the accuracy or reliability of the cameras.

The trial court further observed that because Mr. Klein did not appeal any of his multiple traffic violations, he could not represent a class pursuing any claims arising out of the administrative hearing process. As a result, Mr. Klein's only potential claims on which he could represent a class were reduced to his two fraud-based claims.

Based on its analysis of the law and evidence, the trial court concluded that Mr. Klein failed to prove any of the five requirements for class certification, set forth in La. C.C.P. art. 591(A),[8] for the following reasons:

---

[7] The Affidavit of Non-Liability only lists two defenses—(i) the "Vehicle/license plate was stolen (copy of police report required)"; and (ii) the "Vehicle was sold (copy of notarized bill-of-sale is required)." In its pleadings below, the City contends that only these two defenses are available by mail-in affidavit—as opposed to through the in-person hearing process—because only these two defenses can be determined by reviewing documents submitted. The City points out that the merits of the other four affirmative defenses require a hearing at which a vehicle owner can testify, offer evidence, and call witnesses.

The other four defenses are as follows: (i) the operator was following the directions of a law enforcement or public safety officer at the time of the violation; (ii) the operator was attempting to move out of the way of an approaching emergency vehicle at the time of the violation; (iii) the vehicle was being operated as emergency vehicle (*e.g.* rushing to the hospital) at the time of the violation; or (iv) the vehicle was being operated by a person other than the owner without the consent of the owner at the time of the violation.

[8] La. C.C.P. art. 591(A) provides as follows:

*Numerosity*: The trial court observed that Mr. Klein failed to provide any evidence of the number of persons that were actually aggrieved by the alleged deficiencies regarding the Photo Safety Program. *See Albe v. City of New Orleans*, 14-1013 (La. App. 4 Cir. 7/29/15), 174 So.3d 212.

*Commonality*: The trial court observed that Mr. Klein failed to meet this requirement because "fraud claims necessitate that the court examine each person's specific actions and injuries in response to the Notices of Violation." *Albe, supra*. The trial court noted there were a "multitude of individualized inquiries and proof that make up the damage and liability issues."[9]

---

A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:

(1) The class is so numerous that joinder of all members is impracticable.

(2) There are questions of law or fact common to the class.

(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.

(4) The representative parties will fairly and adequately protect the interests of the class.

(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case. This prerequisite shall not be satisfied if it is necessary for the court to inquire into the merits of each potential class member's cause of action to determine whether an individual falls within the defined class.

[9] The trial court observed that the multitude of individualized inquiries and proof that make up the damage and liability issues included the following:

a) [W]hether the recipient of the Notice of Violation actually read the alleged misstatements in the Notice of Violation;

b) [W]hether the recipient even accessed the [A]ffidavit of [N]on-[L]iability;

c) [W]hether the ATES Ordinance's affirmative defenses allegedly omitted from the [A]ffidavit of [N]on-[L]iability even applied to the recipient's violations;

d) [W]hether the recipient relied upon such alleged deficiencies in the Notice of Violation and the [A]ffidavit of [N]on-[L]iability or if like Plaintiff, Mr. Klein, the recipient knew there were flaws but paid any way;

e) [W]hether any reliance was justifiable or excusable;

f) [W]hether the recipient paid the face value of the Notice of Violation according to the four standard options or if like Plaintiff, Mr. Klein, the recipient disregarded those options and negotiated a discounted settlement; and,

*Typicality and Adequacy of Representation*: The trial court observed that Mr. Klein failed to meet either of these requirements for two reasons. First, as to a claim regarding the administrative hearing process, the trial court reasoned that given Mr. Klein's status as the sole remaining plaintiff coupled with the fact Mr. Klein never attempted to appeal his Notices of Violation, he could not represent a class on a claim associated with appealing a Notice of Violation. Second, given that "Mr. Klein testified [in his deposition] that he knew of the alleged flaws/fraud in the Notices, he chose to settle [with the City] and paid money to resolve his Notices of Violation," he could not "represent a class of those who paid because they did not know of defenses or alleged deficiencies because he did know and paid anyway." The trial court further observed that because Mr. Klein was the only remaining putative class representative, it would be improper to create subclasses.

*Objectively Definable Class*: The trial court observed that Mr. Klein failed to meet this requirement for two reasons. First, "[t]he proposed class is overly broad in that it includes individuals who have been allegedly harmed by the alleged deficiencies in the Notices of Violation." Second, the proposed class includes prescribed claims.[10]

Given its finding that Mr. Klein failed to satisfy any of the La. C.C.P. art. 591(A) requirements, the trial court pretermitted consideration of the La. C.C.P. art. 591(B) requirements. This appeal followed. *See* La. C.C.P. art. 592(A)(3)(c) (providing the right to appeal a trial court's ruling denying a motion to certify).

On appeal, Mr. Klein assigns only one error—the trial court's finding that he failed to satisfy any of the La. C.C.P. art. 591(A) requirements for class certification.

**Standard of Review and Class Action Principles**

Louisiana appellate courts have identified the following four guideposts for analyzing a trial court's ruling on a motion to certify:

- The standard of our review is abuse of discretion;

g) [I]f the recipient negotiated a settlement, whether its terms bar re-litigation of the same Notice(s) under the rules or res judicata.

[10] The trial court observed that "[t]he proposed definition includes claims that are prescribed on their face as it includes those who received their Notices of Violation(s) more than one year before Plaintiffs filed their Original Petition in 2017 or who had a Notice of Violation appeal that concluded more than one year before Plaintiffs filed this Motion for Class Certification in December, 2023."

- We are to be guided by the state and federal jurisprudence interpreting Federal Rule 23 and our own law;

- For purposes of certification, a court is not permitted to review the claims in a case on their substantive merits; and

- The burden is on the plaintiffs to establish that the statutory criteria for a class certification are met.

*Soileau v. Churchill Downs Louisiana Horseracing Co.*, 21-0022, 21-0049, 21-0188, p. 66 (La. App. 4 Cir. 12/22/21), 334 So.3d 901, 942 (reformatted and internal citations and quotations omitted).

Expounding on each of the guideposts, we first note that although an abuse of discretion standard applies to the trial court's ultimate decision of whether or not to certify the class, a manifest error standard applies to the trial court's fact findings; and a *de novo* standard applies to determine if the trial court applied the correct legal standards in determining whether or not to certify the class. *Doe v. S. Gyms, LLC*, 12-1566, 12-1572, 12-1580, p. 9 (La. 3/19/13), 112 So.3d 822, 830. Thus, a tri-partite standard applies.

Second, it is well-settled that Louisiana courts look to federal case law on class actions for guidance in construing Louisiana class action rules. "To the extent La. C.C.P. art. 591 parallels Federal Rule 23 regarding class actions, the analysis of Louisiana's class certification is appropriately informed by federal jurisprudence interpreting Federal Rule 23." *Doe*, 12-1566, 12-1572, 12-1580, p. 6, 112 So.3d at 828.

Third, although a class action is only a procedural device, "[t]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Anderson v. City of New Orleans*, 17-0999, 17-1020, 17-1052, p. 19 (La. App. 4 Cir. 5/2/18), 248

So.3d 428, 442 (internal quotations and citations omitted). "Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Doe*, 12-1566, 12-1572, 12-1580, p. 9, 112 So.3d at 829-30 (internal citations omitted).

Fourth, by statute, the burden of proving the threshold requirements for certifying a class is placed on the proponent; La. C.C.P. art. 592(A)(3)(b) provides "[a]t the hearing on the motion to certify an action as a class action, the proponent of the class shall have the burden of proof to establish that all requirements of Article 591 have been satisfied." A preponderance of the evidence standard is applied. *Sullivan v. Malta Park*, 19-0086, p. 6 (La. App. 4 Cir. 5/22/19), 363 So.3d 462, 466 (internal quotations and citations omitted) (observing that "[t]he burden is on the plaintiff, as the party seeking to utilize the class action procedure, to establish each element by a preponderance of the evidence").

Louisiana's class action rules are codified in La. C.C.P. arts. 591 to 597. The threshold requirements for class certification are set forth in La. C.C.P. art. 591,[11] which sets forth a sequential-step analysis. Step one is the requirement that all five Article 591(A) threshold factors must be met; step two is that at least one Article 591(B) factor must be met. *See* La. C.C.P. art. 591(B) (providing that "[a]n action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition" at least one of the

---

[11] The Legislature, emphasizing the commonality and predominance requirements, has provided the following two restrictions. First, "[c]ertification shall not be for the purpose of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class." La. C.C.P. art. 591(C). Second, "the court shall not order the class-wide trial of issues dependent for their resolution on proof individual to a member of the class, including but not limited to the causation of the member's injuries, . . . the individual knowledge or reliance of the member, or the applicability to the member of individual claims or defenses." La. C.C.P. art. 592(E)(5).

prerequisites of Paragraph B); *Oliver v. Orleans Par. Sch. Bd.*, 09-0489, p. 15 (La. App. 4 Cir. 11/12/09), 25 So.3d 189, 201 (observing that "[a] court reaches [the second] level of analysis only if it finds that all the requirements of [A]rticle 591(A) have been satisfied"). Moreover, "failure to meet one of these threshold requirements [codified in La. C.C.P. art. 591(A)] precludes class certification." *Doe*, 12-1566, 12-1572, 12-1580, p. 7, 112 So.3d at 828 (citing La. C.C.P. art. 591(B)).

The Louisiana Supreme Court, in *McCastle v. Rollins Env't Servs. of Louisiana, Inc.*, 456 So.2d 612, 620 (La. 1984), observed that the general rule is "if there is to be an error made, it should be in favor and not against the maintenance of the class action." But, more recently, the Supreme Court, in *Price v. Martin*, 11-0853, p. 7 n.8 (La. 12/6/11), 79 So.3d 960, 967, instructed:

> To the extent that [general rule] language in *McCastle*, . . . has been interpreted by courts as relaxing the plaintiffs' burden in establishing the appropriateness of the class action for a particular case or the court's role in evaluating whether the required statutory showing has been met, it has been misinterpreted. This general rule does not obviate the requirement that courts employ a "rigorous analysis" and take a "close look" at a case to determine if, in fact, the statutory requirements have been satisfied before accepting it as a class action.

The Supreme Court, in the *Doe* case, reiterated this instruction. 12-1566, 12-1572, 12-1580, p. 14, 112 So.3d at 832-33.

"Class action rules do not set forth a mere pleading standard; rather, a party seeking class certification must affirmatively demonstrate his compliance with the [class action rules]—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Price*, 11-0853, p. 7; 79 So.3d at 967 (emphasis in original, internal quotations and citations omitted). "Conclusory allegations in the pleadings are insufficient to prove these

elements; however, the court may consider the pleadings, affidavits, depositions, briefs, exhibits and testimony presented at the certification hearing." *Billieson v. City of New Orleans*, 98-1232, p. 10 (La. App. 4 Cir. 3/3/99), 729 So.2d 146, 154.

With those principles in mind, we turn to the issue presented here of whether the trial court erred in finding that Mr. Klein failed to meet all of the La. C.C.P. art. 591(A) threshold requirements.

**Numerosity**

The first threshold requirement for class certification is numerosity. This requirement is codified in La. C.C.P. art. 591(A)(1), which provides that "[t]he class is so numerous that joinder of all members is impracticable." The Supreme Court, in the *Doe* case, extensively outlined the following principles that govern the numerosity requirement.[12]

First, the numerosity requirement, despite its label, is "not based on the number of class members alone. The requirement of numerosity is followed by, and must be considered with, the core condition of this requirement—that joinder be impracticable." *Doe*, 12-1566, 12-1572, 12-1580, p. 10, 112 So.3d at 830

---

[12] In the *Doe* case, the plaintiff alleged that she was secretly videotaped in various stages of undress through the use of a hidden camera in one of the defendant's gym locker rooms. The *Doe* plaintiff sought to certify the following class: "[a]ll females who physically entered the women's restroom/locker room/changing room at Anytime Fitness, 200 Government Street, Baton Rouge, Louisiana 70802, from November 1, 2009, through and including April 5, 2010." *Doe*, 12-1566, 12-1572, 12-1580, p. 4, 112 So.3d at 827. Although the *Doe* plaintiff claimed that around 250 to 300 women were impacted by the common event of secret videotaping, the *Doe* plaintiff testified that she had "no information or knowledge about any damage or injuries suffered by any other woman who went to the gym between November of 2009 and April 5, 2010." *Doe*, 12-1566, 12-1572, 12-1580, p. 17, 112 So.3d at 834. The *Doe* plaintiff further testified that "she had . . . no evidence of a causal link between [the secret videotaping activity] and any purported damages." *Doe*, 12-1566, 12-1572, 12-1580, p. 19, 112 So.3d at 835. The Supreme Court concluded that "[f]ailing to present evidence of a definable group of aggrieved persons, the plaintiff fails to prove a sufficient number of persons exist which make joinder impracticable." *Id.* The Supreme Court, thus, reversed the trial court's judgment granting the motion to certify.

(internal citation omitted). "In keeping with the fact this is an impracticability of joinder rule, and not merely a numbers requirement, there is no strict numerosity threshold." *Doe*, 12-1566, 12-1572, 12-1580, p. 11, 112 So.3d at 831 (internal citations omitted). Simply put, there is no magic number of class members that will satisfy the numerosity requirement.

Second, numerosity is a factual determination. "This element is determined based upon the facts and circumstances of each individual case." *Doe*, 12-1566, 12-1572, 12-1580, p. 10, 112 So.3d at 830. This aspect of numerosity has two corollaries. First, because a trial court's determination as to whether the numerosity requirement has been met is a factual one, such determination is reviewed under a manifest error standard. *Doe*, 12-1566, 12-1572, 12-1580, p. 13, 112 So.3d at 832. Second, the proponent must present evidence to establish that the numerosity requirement is met.

Third, like the other La. C.C.P. art. 591(A) certification requirements, numerosity is subject to a rigorous, fact-based analysis. Numerosity is "not met by simply alleging that a large number of potential claimants exist." *Doe*, 12-1566, 12-1572, 12-1580, p. 11, 112 So.3d at 831. The requirement that a proponent produce facts to establish numerosity has two prongs; the proponent must establish that: (i) joinder is impractical; and (ii) a definable group of aggrieved persons exists. *Doe*, 12-1566, 12-1572, 12-1580, p. 12, 112 So.3d at 831 (observing that "a party must show that joinder is impractical and there is a definable group of

aggrieved persons"). Neither prong can be established by conclusory allegations or speculation.

Fourth, although the impracticability of joinder prong is a case-by-case determination, the jurisprudence has developed a number of factors that courts should consider in determining if joinder is impracticable. These factors—labeled the *Galjour* factors after this Court's *Galjour* case[13]—are as follows: (1) the geographic dispersion of the class; (2) the ease with which class members may be identified; (3) the nature of the action; (4) the size of the individual claims; (5) judicial economy in avoiding a multiplicity of lawsuits; and (6) financial resources of class members. *Doe*, 12-1566, 12-1572, 12-1580, p. 12, 112 So.3d at 831 (internal citations omitted).

Finally, the other prong the proponent must establish is a definable group of aggrieved persons. *Id.* (collecting cases including *Farlough v. Smallwood*, 524 So.2d 201, 203 (La. App. 4th Cir. 1988)). "While there must be proof of a definable group of aggrieved persons, a plaintiff is not required to identify every member of the potential class prior to certification." *Doe*, 12-1566, 12-1572, 12-1580, p. 12, 112 So.3d at 831. But, "an aspect of presenting evidence of a defined group of aggrieved persons includes the fact that those persons are *identifiable* in some way." *Doe*, 12-1566, 12-1572, 12-1580, p. 17, 112 So.3d at 835 (emphasis in original); *see also* Eldon E. Fallon, LA. PRAC. TRIAL HANDBOOK FOR LA. LAWYERS

---

[13] *See Galjour v. Bank One Equity Invs.-Bidco, Inc.*, 05-1360 (La. App. 4 Cir. 6/21/06), 935 So.2d 716.

§ 5:6 (3d ed. 2025) (observing that "[a] class must be definable, for purposes of the 'numerosity' requirement for a class action").[14] "Failing to present evidence of a definable group of aggrieved persons, the plaintiff fails to prove a sufficient number of persons exist which make joinder impracticable." *Doe*, 12-1566, 12-1572, 12-1580, p. 19, 112 So.3d at 835. Such is the case here.

The trial court, in finding that Mr. Klein failed to meet his burden of proving numerosity, reasoned that Mr. Klein failed to establish a definable group of aggrieved persons. In making that finding, the trial court cited the *Albe* case. Mr. Klein, in his brief to this Court, neither cites nor distinguishes the *Albe* case. Instead, he repeats the arguments that he made in the trial court. He contends that while the exact number and identities of the class plaintiffs are unknown presently, since the implementation of the ATES Ordinance in 2007, the City and ATS have issued over 800,000 citations and have jointly collected in excess of $88,000,000. He further contends that the sheer size of the class is too large to make joinder practicable and that the relatively small size amount of the individual claims could threaten the loss of substantive rights if a class action is disallowed.

---

[14] The requirement of a "definable group of aggrieved persons" dovetails with the statutory requirement that the class be objectively defined set forth in La. C.C.P. art. 591(A)(5). In tying the numerosity requirement to a "definable group of aggrieved individuals," the jurisprudence implicitly has recognized the overlap between the numerosity requirement and the objectively definable class requirement set forth in La. C.C.P. art. 591(A)(5). Indeed, in finding the objectively defined class requirement not met, this Court in *Albe* observed: "[t]he parties seeking certification must be able to establish a definable group of *aggrieved* persons based on objective criteria derived from the operative facts of the case." 14-1013, p. 14, 174 So.3d at 222 (emphasis in original). We further observed that "[t]he final class definition set forth in the fifth petition does not limit itself to only those harmed or aggrieved by a delinquency notice with the 'possible jail time' language. In other words, the class definition includes thousands of individuals who would not have a cause of action." *Id.*

The City and ATS counter that the *Albe* case is dispositive. They contend that the trial court correctly rejected Mr. Klein's raw statistical numerical evidence. They emphasize Mr. Klein's failure to present any evidence that he or any other potential class member was actually induced to pay a fine based on any alleged misrepresentations on the Notice of Violation or omissions from the Affidavit of Non-Liability. According to ATS and the City, the trial court correctly determined that Mr. Klein failed to demonstrate a definable group of aggrieved persons exists.

The *Albe* case is procedurally and factually parallel to this case. Procedurally, the *Albe* case, like this case, was a proposed class action arising out of a citation issued under the City's Photo Safety Program. Like this case, the *Albe* case had a protracted procedural history. In their fifth iteration of the petition, the *Albe* plaintiffs requested certification of a class composed of "[p]ersons who received a Delinquency Notice from the City of New Orleans, Photo Safety Program . . . and which Delinquency Notice contained the statement that 'possible jail time may be assessed against you.'" *Albe*, 14-1013, p. 5, 174 So.3d at 216-17.

Factually, the *Albe* plaintiffs, like Mr. Klein, asserted, among other things, a fraud claim.[15] Although the *Albe* plaintiffs' fraud claim was somewhat different from Mr. Klein's fraud claims,[16] the *Albe* plaintiffs' offer of proof of numerosity was the same as Mr. Klein's—raw statistical numerical evidence. The *Albe* plaintiffs submitted proof that about 42,000 deficiency notices containing the

---

[15] The *Albe* case also involved other tort claims, including intentional infliction of emotional distress. *Albe*, 14-1013, p. 4, 174 So.3d at 216.

[16] As noted elsewhere, the *Albe* plaintiffs' fraud claim was based on "possible jail time" language in the deficiency notice that were mailed to them.

offending "possible jail time" language were mailed to vehicle owners. Affirming

the trial court's finding that this was insufficient proof to satisfy the numerosity

requirement, this Court observed:

> The trial court stated that to be "aggrieved" in this case, a vehicle owner must not only have received a delinquent notice with the "possible jail time" language, but must also have read the language on the back of the notice. The plaintiffs' own expert . . . testified at the certification hearing that a difference exists between mere receipt of a notice and the actual reading of the notice. The trial court found that the plaintiffs had failed to produce sufficient evidence that a substantial number of persons suffered damages or injuries as a result of the receipt of the "possible jail time" language.

> The plaintiffs argue that the evidence introduced at the hearing demonstrated that approximately 42,000 letters containing the offending language were mailed. Of those, about 5,600 were returned as undeliverable. We agree with plaintiffs that Louisiana courts have certified classes of just over 100 members. We, however, find that this matter concerns more than a tally of how many individuals received a notice with the "possible jail time" language. We agree with the trial court that plaintiffs needed to show that more than one or two people were aggrieved by that language and suffered damages.

*Albe*, 14-1013, p. 10, 174 So.3d at 219-20.

In *Albe*, this Court cited *Chiarella v. Sprint Spectrum, LP*, 04-1433 (La.

App. 4 Cir. 11/7/05), 921 So.2d 106, in support of the determination that the

numerosity requirement was not met. There, the *Chiarella* plaintiffs sought to

certify a class composed of "individuals . . . who subscribed to Sprint PCS wireless

service or who purchased a Sprint telephone in the Greater New Orleans market,

from the date of launch, . . . and for two years thereafter." *Id.*, 04-1433, p. 3, 921

So.2d at 110. The *Chiarella* plaintiffs' core contention was that the Sprint PCS

wireless services had a high volume of blocked and dropped calls and that they

were unable to place and receive calls in certain geographical areas. *Id.*, 04-1433,

p. 4, 921 So.2d at 111. It was undisputed that there were approximately 60,000 Sprint PCS wireless subscribers during the class period. And, the *Chiarella* plaintiffs' expert testified that all subscribers would be equally affected by the dropped calls and would have experienced excessive dropped calls. Nonetheless, this Court concluded that the trial court erred in finding the numerosity requirement was met. In so doing, we reasoned that "[b]ased on the evidence in the record, . . . a court cannot assume that all of the Sprint PCS wireless subscribers were unhappy with their service." *Id.*, 04-1433, p. 20, 921 So.2d at 120. This Court observed that "the plaintiffs must demonstrate with evidence a definable group of *aggrieved* claimants, which they did not do at the certification hearing." *Id.*, 04-1433, p. 20, 921 So.2d at 120 (emphasis in original).

Here, the trial court, in finding Mr. Klein failed to satisfy the numerosity requirement, observed that Mr. Klein failed to provide any evidence of the number of persons that actually—in fact—were aggrieved by the alleged deficiencies regarding the Photo Safety Program. The record supports the trial court's finding.

Mr. Klein's only remaining claims are his two fraud claims—fraud premised on alleged deficiencies in the Notices of Violation, and fraud premised on alleged omissions in the Affidavit of Non-Liability. The jurisprudence has observed that "a party asserting fraud is required to allege that it was unaware that the opposing party's representation was false, and that the misrepresentation caused it to act differently than it would have had it known the truth." *Thomas v. Chambers*, No. CV 18-4373, 2019 WL 485781, at *3 (E.D. La. Feb. 7, 2019) (*unpub.*) (citing *Sun*

*Drilling Prods. Corp. v. Rayborn,* 00-1184 (La. App. 4 Cir. 10/3/01), 798 So.2d 1141). As the party asserting fraud, Mr. Klein was required to present evidence of reliance on the alleged deficiencies (misrepresentations) in the Notices of Violation and Affidavit of Non-Liability.

Mr. Klein failed to present any evidence identifying who among the potential class members actually read the alleged deficiencies in the Notice of Violation and the Affidavit of Non-Liability, relied on them, or paid any fines or penalties as a result. Indeed, Mr. Klein's deposition testimony establishes that he did not rely on statements in the multiple Notices of Violation that he received, did not read the Affidavit of Non-Liability, and did not pay the fines stated on the face of the Notices of Violation that he received. Mr. Klein also never invoked any of the four methods provided for paying a fine imposed under the Photo Safety Program—online, by phone, by mail, or in person. Instead, he negotiated a settlement with the City at a substantial discount and paid a compromised amount.

Mr. Klein's arguments regarding the numerosity requirement—based on raw statistical numerical evidence—are defied by the Supreme Court's holding in *Doe* and this Court's holdings in *Albe* and *Chiarella*. Numerosity requires proof that a definable group of aggrieved persons exists; conclusory allegations are insufficient. The record supports the trial court's finding that Mr. Klein failed to provide proof that a definable group of aggrieved persons exists. Accordingly, the trial court did not err in determining that Mr. Klein failed to establish that the

numerosity requirement was met. Nor did the trial court abuse its discretion in denying the motion to certify.

As this Court has observed, the failure of the proponent to establish any of the La. C.C.P. art. 591(A) requirements is the "death knell" for class certification. *Doe v. Univ. Healthcare Sys., L.L.C.*, 13-1457-66, p. 12 (La. App. 4 Cir. 7/9/14), 145 So.3d 557, 566 (citing *Doe*, 12-1566, 12-1572, 12-1580, pp. 6-7, 112 So.3d at 828). Here, Mr. Klein's failure to meet the numerosity requirement precludes class certification, making a discussion of any of the other La. C.C.P. art. 591(A) requirements unnecessary. *See Sullivan v. Malta Park*, 19-0086, p. 19 (La. App. 4 Cir. 5/22/19), 363 So.3d 462, 474 (citing *Galjour*, 05-1360, pp. 14-15, 935 So.2d at 727 (quoting *Ewh v. Monarch Wine Co.*, 73 F.R.D. 131, 132 (E.D.N.Y.1977)) (observing that "'[c]onsideration of numerosity alone is sufficient to establish that class action certification should be denied'").[17]

## **DECREE**

For the foregoing reasons, the judgment of the trial court denying Mr. Klein's motion to certify is affirmed.

**AFFIRMED**

---

[17] In so finding, we note that the Supreme Court in *Doe* reversed the trial court's ruling granting the motion to certify based solely on its finding that the *Doe* plaintiff failed to prove the numerosity requirement. 12-1566, 12-1572, 12-1580, p. 19, 112 So.3d at 835-36.